UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TOUCHPOINT COMMUNICATIONS, LLC, an Oregon Limited Liability Company, d/b/a WEO MEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DENTALFONE, LLC, a Florida Limited Liability Company.<br><br>Defendant. | CASE NO. 3:15-cv-05240-JRC<br><br>ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Joint Status Report, Dkt. 17, p. 3). This matter is before the Court on plaintiff's motion to dismiss counterclaims and has been fully briefed (*see* Dkts. 39, 40, 42, 43).

After considering and reviewing the record, the Court concludes that defendant has provided a sufficiently detailed description of its alleged Trade Dress to put plaintiff

on notice as to what constitutes the Trade Dress. Furthermore, as the Trade Dress consists of specific shapes in a specific configuration, it is not inherently functional. Finally, the counterclaim, if accepted as true, contains sufficient factual allegations to demonstrate that defendant potentially could prove secondary meaning.

Therefore, defendant's counterclaim for Trade Dress Infringement states a claim for relief that is plausible on its face and raises a right to relief above the speculative level.

For these reasons and other reasons discussed herein, the Court denies plaintiff's Motion to Dismiss defendant's counterclaims.

BACKGROUND

The following background information is taken from the parties' COMBINED JOINT STATUS REPORT AND DISCOVERY PLAN (*see* Dkt. 17, p. 2).

Plaintiff, TOUCHPOINT COMMUNICATIONS, LLC *d/b/a* WEO MEDIA, LLC ("WEO"), is an Internet dental marketing company that conducts business in the State of Washington, and is registered as "Touchpoint Communications, LLC" *d/b/a* WEO Media. Touchpoint Communications, LLC is also registered and operates as WEO Media, LLC in the State of Oregon.

Defendant, DENTALFONE, LLC, is an internet dental marketing company that conducts business in the State of Washington, and is organized in the State of Florida.

The dispute between the parties began when, according to defendant, the parties both "attended and were vendors at the 29th Annual Meeting of the Academy of Osseointegration, held in Seattle, Washington on March 6-8, 2014" ("AO meeting")

(Dkt. 36, ¶ 21). Defendant alleges that a representative of plaintiff visited defendant's booth and engaged in detailed conversations, including discussions about product design, pricing and benefits (Dkt. 36, ¶ 22). Defendant also alleges that plaintiff's representative had access to defendant's Trade Dress at this time, indicated "that he was impressed with the Design and thought [it was] a great product," and further "indicated a desire to develop partnering opportunities between [the parties] (Dkt. 36, ¶¶ 23, 24, 25). According to defendant, the representative made statements during the discussions at the 2014 AO Meeting that [plaintiff] might consider recommending [defendant's] mobile applications to their clients in lieu of [plaintiff's] designs in exchange for compensation; . . . . [and] that [plaintiff's] focus was mostly on selling search engine optimization (SEO) services instead of website and mobile application design" (*id.*).

According to defendant, after this meeting, plaintiff copied defendant's designs and began selling them (Dkt. 36, ¶ 38). Defendant alleges in its counterclaim that "upon information and belief, [plaintiff] is aware of the commercial success and industry acclaim for the [defendant] Trade Dress . . . . [and that] [plaintiff] intended to reap the benefit of such success and acclaim by offering designs that are confusingly similar to the [defendant] Trade Dress" (*id.*).



Figure 1. Shown are one of the representative samples of defendant's alleged Trade Dress (left) and a mobile application (right) allegedly designed by plaintiff that allegedly utilized defendant's Trade Dress, as attached to the counterclaim. *See* Dkt. 36, Exhibits A, B.

Defendant Dentalfone sent plaintiff WEO a cease and desist letter dated November 25, 2014, alleging, *interalia*, copyright and trade dress infringement of Dentalfone's proprietary mobile application design. Dentalfone never received any response from WEO. Dentalfone sent WEO a follow-up letter dated March 4, 2015, a copy of which was also sent to Washington based "Smiles Dental" as an alleged infringer of Dentalfone's rights. Once more, Dentalfone did not receive any substantive response.

WEO initiated the subject case by filing a complaint for declaratory judgment alleging that it has not infringed Dentalfone's copyrights and further that Dentalfone has no copyrights in Dentalfone's mobile application design. In addition, WEO alleges that it has not infringed Dentalfone's trade dress related to its mobile application design and further that Dentalfone has no trade dress rights in Dentalfone's mobile application design.

## PROCEDURAL HISTORY

Plaintiff filed its complaint on April 15, 2015 (*see* Dkt. 1) and its Amended Complaint on April 16, 2015 (*see* Dkt. 5). Defendant filed its Answer to Amended Complaint with Jury Demand, and Counterclaim against plaintiff on July 27, 2015 (*see* Dkt. 20). On August 14, 2015, plaintiff filed a motion to dismiss in part defendant's counterclaim for failure to state a claim regarding Counts II, IV, V and VI (*see* Dkt. 27). On October 9, 2015, this Court granted plaintiff's motion, however defendant was given leave to amend the counterclaim within 21 days (Dkt. 35).

On October 30, 2015, defendant filed its answer to the amended complaint with amended counterclaims against plaintiff (Dkt. 36). This time, defendant did not include a

counterclaim for copyright infringement, "in favor of more ripe counts of trade dress infringement, violations of unfair competition law and state misappropriation, as it has not yet received a copyright registration for its design" (Dkt. 41, p. 5).

On November 13, 2015, plaintiff filed a motion to dismiss defendant's counterclaims (Dkt. 39). Defendant filed a response on December 7, 2015 (*see* Dkt. 40), and plaintiff filed its reply on December 11, 2015 (*see* Dkt. 42; *see also* Dkt. 43).

## STANDARD OF REVIEW

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) provides that a court should dismiss a claim pursuant to Fed. R. Civ. P. 12(b)(6) either because of the lack of a cognizable legal theory or because of the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

For purposes of ruling on this motion, material allegations in the complaint (counterclaim) are taken as admitted and the complaint is construed in favor of the non-moving party. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). "While a complaint attacked by a Fed. R. Civ. P. 12(b)(6) motion to dismiss does not need detailed factual allegations, plaintiff's [or in the case of the counterclaim herein, defendant's] obligation to provide the grounds for entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, supra,* 550 U.S. at 545 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 545. In its

counterclaim, defendant must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

## DISCUSSION

Plaintiff contends that defendant's counter claims (Counts I, II, III, IV, and V) should be dismissed. Defendant contends that all counts properly state a claim for relief.

**1. Count I – Trade Dress Infringement pursuant to the Lanham Act**

Plaintiff contends that defendant's counterclaim for trade dress infringement pursuant to the Lanham Act should be dismissed because defendant's trade dress is not distinctive, because defendant's trade dress is inherently functional and because it lacks secondary meaning. Defendant disputes these contentions.

The "Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . . commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (*quoting* 15 U.S.C. § 1127). A trade dress infringement claim "requires a showing that plaintiff's trade dress is protected – *i.e.*, that it identifies the product source either by being inherently distinctive or having secondary meaning – that it is not functional, and that the defendant's trade dress is confusingly similar to the plaintiff's from the prospective of consumers." *Salt Optics, Inc. v. Jand, Inc.*, 2011 U.S. Dist. LEXIS 156237 at *4-*5 (C.D. Cal. 2011) (*citing* 15 U.S.C. 1125; *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769-60 (1992); *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252 (9th Cir. 2001)).

First, plaintiff contends that defendant's trade dress is not distinctive and "is wrought with generalities insufficient to put any party on notice as to exactly what the embodied trade dress is" (*see* Dkt. 39, p. 4). *See also Sleep Sci. Partners v. Lieberman*, 2010 U.S. Dist. LEXIS 45385 at *7 (N.D. Cal. 2010) (unpublished opinion) (*citing Walker & Zanger, Inc. v. Paragon Indus., Inc.,* 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007) (*citing Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001) (other citation omitted))) (a party claiming trade dress infringement "should clearly articulate its claimed trade dress to give a defendant sufficient notice").

Defendant contends that:

> [it] clearly articulates its claimed trade dress in its counterclaim as consisting of "square and rectangular-shaped boxes of various sizes positioned in a distinctive layout with a large banner at the top of the user interface which includes text and brand names/logos, a row of square-shaped boxes with straight or rounded corners directly below containing navigational icons and text, a second large rectangular-shaped area with straight or rounded corners directly below the row of icons featuring a photo/image, and a selection of square and rectangular-shaped boxes with straight or rounded corners directly below containing icons and text" (internal citation to Dkt. 36, ¶¶ 16, 43)). This is "a fixed list of the elements alleged to comprise the websites overall 'look and feel', which is the trade dress.

(Dkt. 40, p. 5 (*quoting Salt Optics, Inc. v. Jand, Inc.,* 2011 U.S. Dist. LEXIS 156237 at *7 (C.D. Cal. 2011)).

The Court concludes that defendant's arguments are persuasive.

In *Salt Optics,* the plaintiff was seeking "protection for the composite effect of several of the website's allegedly distinctive design elements and features; in other words, plaintiff assert[ed] a trade dress in the overall 'look and feel' of its website." *Id.*

at *5. The Central District of California court concluded "that a website's total 'look and feel' [could] constitute a protectable trade dress." *Id*. at *5-*6 (collecting cases). After initially dismissing the claim with a holding "that a mere cataloguing of the website's features provides an inadequate notice of the plaintiff's claimed 'look and feel' trade dress, the court denied the second motion to dismiss the amended claim as the plaintiff had "provided a fixed list of the elements alleged to comprise the website's overall 'look and feel,' . . . . [and] synthesize[d] the[] elements through a combination of written explanation and graphic images that span[ed] five pages." *Id.* at*6-*7 (citations omitted).

Here, defendant, as cited above, has provided a sufficiently fixed list of elements which comprise the websites overall "look and feel" (Dkt. 40, pp. 4-5 (*citing* Dkt. 36, ¶¶ 16, 43)). In addition, as noted by defendant, it "further articulates its distinctive trade dress by attaching multiple representative images of its trade dress as well as images of the infringing website to its counterclaim" (*id.* at p. 5 (*citing* Dkt. 36, Exs. A, B, C)).

Plaintiff first argues that defendant may be "claiming that its trade dress encompasses merely the square and/or rounded-edges of two geometric shapes (square and rectangle)" (*see* Dkt. 39, p. 4). However, this argument fails to acknowledge that the counterclaim indicates that the "square and rectangular-shaped boxes" are "positioned in a distinctive layout with a large banner at the top . . . . a row of square-shaped boxes . . . . directly below . . . . a second large rectangular-shaped area . . . . directly below the row of icons featuring a photo/image, and a selection of square and rectangular-shaped boxes . . . . directly below containing icons and text" (Dkt. 36, ¶ 43). Plaintiff's contention that the alleged trade dress may encompass merely square

and/or rounded edges of two geometric shapes is without merit. Furthermore, although plaintiff contends that the described organization or layout of the shapes is "nearly undiscernable," the Court disagrees. Defendant has clearly articulated the specific layout of its alleged trade dress. (*see* Dkt. 36, ¶ 43). Similarly, plaintiff's argument that the trade dress could be represented by "any organization of the general geometric shapes" is without merit. As just noted, defendant has clearly articulated the specific layout of the alleged trade dress, specifying that the features are in rows, and further specifying which features are in which row (*see id.*).

The Court has reviewed the trade dress allegations and concludes that plaintiff is provided sufficient notice of the trade dress allegations. *See Salt Optics, supra,* 2011 U.S. Dist. LEXIS 156237 at *7. The Court finds analogous the circumstance presented herein to the one presented in *Lepton Labs*, in which the Central District of California Court found that, "granting a dismissal motion based upon [plaintiff's] belief [that defendant's allegations do not make out a claim for protectable trade dress] would turn the litigation process on its head, [as] [a] court must test the legal merits of a plaintiff's alleged trade dress at summary judgment or trial when the parties provide [the court] with all relevant admissible evidence-not at the pleading stage when the court has little more than the plaintiff's allegations and the defendant's summary denial of them." *Lepton Labs. LLC v. Walker*, 55 F. Supp. 3d 1230, 1241 (C.D. Cal. 2014)). As noted by that court, as "long as a plaintiff has alleged a complete recitation of the concrete elements of its alleged trade dress, it should be allowed to proceed." *Id.* Therefore, the Court does not find persuasive plaintiff's argument that defendant fails to assert properly a claim for trade dress

infringement on the basis that the trade dress is not distinctive. That determination involves a factual question that should not be decided at this stage of the litigation.

Plaintiff also argues that even when the allegations are viewed in favor of defendant, "the described trade dress is inherently functional" (Dkt. 39, p. 4). However, plaintiff has confused the "look and feel" of the website with the functional aspects of the website. Defendant is not attempting to allege trade dress solely on the fact that the icons can be used to navigate to other pages and is not claiming trade dress in the computer code that effectuates such a command. Instead, defendant alleges trade dress in the overall "look and feel" of the website, consisting of specific shapes and a specific layout. For example, plaintiff contends that without "the associated square or rectangle the user would not know where to press on the screen in order to navigate to her desired website or application location" (Dkt. 39, p. 5). However, the places to press on the screen could be delineated by, for example, lines of simple text, or circles, stars, or flowers, or any other shape, and they could be organized in any manner, such as concentric circles versus in specific rows. Plaintiff's argument is not persuasive. The Court also notes defendant's argument that the Ninth Circuit has held that "[f]unctionality is a question of fact" (Dkt. 40, p. 9 (*quoting Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001) ("The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress *as a whole* is functional; rather, 'functional elements that are separately non protectable can be protected together as part of a trade dress'") (*quoting Le Sportsac, Inc. v. K.Mart Corp.*, 754 F.2d 71, 76 (2d Cir. 1985)) (other citations omitted)). Granting all inferences in favor of defendant for the purposes of this

motion, defendant sufficiently has alleged a trade dress in the "look and feel" of the website that is non-functional.

Plaintiff also argues that defendant's secondary meaning pleading is too general and insufficient to raise the right to relief above mere speculation (Dkt. 39, p. 5). In doing so, plaintiff relies on a case from the Eastern District of New York (*id*. at pp. 5-6 (*citing Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F.Supp. 3d 317, 344, CV 11-3677 (ARL) (E.D.N.Y. 2014)). Plaintiff argues that the "*Carson* court struck down secondary meaning on each point stating: advertising expenditures are 'not supportive of finding secondary meaning [here] because there is no contention that any of those advertisements . . . . stressed or emphasized the alleged trade dress'" (*id.*). However, as noted by defendant "unlike the plaintiff in *Carson,* [defendant] has alleged, not only that its advertisements '*stressed or emphasized* the alleged trade dress,' as the court required, but further that its advertisements *utilized* the alleged trade dress" (Dkt. 40, p.10-11 (*citing* Dkt. 36, ¶¶ 12, 44)). The Court also notes that the *Carson* court acknowledged that advertising expenditures are relevant in determining the presence of secondary meaning. *Carson*, *supra,* 11 F.Supp. 3d at 343 (citation omitted).

Further supporting the distinction from *Carson*, defendant notes that in its counterclaim, it has alleged that:

> It worked to develop its Trade Dress, services and reputation within the dental industry through extensive industry-focused promotion and marketing, and has built a valuable business based on demand for its distinctively-styled Dentafone Trade Dress (internal citation to Dkt 36, ¶ 9); it has invested substantial time and expense in the development and promotion of the Dentalfone Trade Dress and has spent countless hours and resources over several years to build the reputation of Dentalfone

>  and its Dentalfone Trade Dress in the dental industry (internal citation to *id.*, ¶ 12); as a result of its extensive promotional and marketing efforts, Dentalfone's unique trade dress is recognized in the dental industry, and thus by potential customers and the relevant market (internal citation to *id.* ¶ 11); the Dentalfone Trade Dress embodies a protectable trade dress that is widely recognized in the dental industry and has built up extensive goodwill and acquired secondary meaning among the relevant trade as a symbol identifying Dentalfone as the creator of the Trade Dress (internal citation to *id.* ¶¶15, 17); and the Dentalfone Trade Dress has acquired distinctiveness and secondary meaning among consumers in the dental industry due to Dentalfone's advertising, promotion and sales of products utilizing the Dentalfone Trade Dress (internal citation to *id.* ¶ 44).

(Dkt. 40, p. 11). These allegations distinguish the matter at hand from *Carson, supra*, 11 F.Supp. 3d at 344.

The Court also notes that in *Carson*, the court noted that whether or not there have been attempts to plagiarize the Trade Dress is a relevant factor in determining if secondary meaning has attached. *Carson, supra*, 11 F.Supp. 3d at 343 (citation omitted). The court found that the complaint being attacked by the motion to dismiss did "not allege any facts of attempts to plagiarize the trade dress, but rather aver[ed] generally that 'upon information and belief, defendants plagiarized the [trade dress] . . . ." *Id.* at 344. Here, further distinguishing *Carson*, defendant alleges that the parties both "attended and were vendors at the 29th Annual Meeting of the Academy of Osseointegration, held in Seattle, Washington on March 6-8, 2014" ("AO meeting") (Dkt. 36, ¶ 21); that a representative of plaintiff visited defendant's booth and engaged in detailed conversations, including discussions about product design, pricing and benefits (Dkt. 36, ¶ 22); that plaintiff's representative had access to defendant's Trade Dress at this time, indicated "that he was impressed with the Design and thought [it was] a great product,"

and further "indicated a desire to develop partnering opportunities between [the parties], and made statements during the discussions at the 2014 AO Meeting that [plaintiff] might consider recommending [defendant's] mobile applications to their clients in lieu of [plaintiff's] designs in exchange for compensation; . . . . that [plaintiff's] focus was mostly on selling search engine optimization (SEO) services instead of website and mobile application design" (Dkt. 36, ¶¶ 23, 24, 25); and that "upon information and belief, [plaintiff] is aware of the commercial success and industry acclaim for the [defendant] Trade Dress . . . . [and that] [plaintiff] intended to reap the benefit of such success and acclaim by offering designs that are confusingly similar to the [defendant] Trade Dress" (Dkt. 36, ¶ 38). Therefore, defendant clearly has articulated numerous facts supporting the allegation that plaintiff intentionally plagiarized its Trade Dress.

Based on the above citations to the counterclaim, and granting all inferences to the nonmoving party, the Court concludes for the purposes of this motion that defendant adequately has alleged secondary meaning with respect to its trade dress. The Court also finds persuasive defendant's argument that it "should not be required 'to essentially prove - as opposed to simply allege - that it's trade dress satisfies all the essential elements at the pleading stage'" (Dkt. 40, p.10 (*quoting Lepton Labs*, *supra,* 55 F. Supp. 3d at 1240)). Defendant contends that "given the chance to conduct discovery, [defendant] will be able to document the views of its customers and third parties who have recognized the uniqueness and benefits of the Dentalfone Trade Dress" (Dkt. 40, pp. 11-12).

Granting all inferences in favor of defendant, the Court concludes that defendant has pled facts that, taken as true, provide a reasonable expectation that discovery could reveal evidence that supports defendant's claims and could support a conclusion that defendant's trade dress has secondary meaning.

Finally, in support of its motion to dismiss, plaintiff argues that the Trade Dress alleged is a direct infringement of copyrights plaintiff owned with respect to a website as early as 2012 (Dkt. 39, p. 6 (*citing* attached Exh. A)). Defendant, however, contends that the website attached "differs substantially from the written description of [defendant's] Trade Dress . . . . [in that] the [attached] website, 'Section 4,' lacks any 'icons' and 'Section 3' does not contain just a photo/image as described in [defendant's] written explanation of its trade dress" (Dkt. 40, p. 7). Defendant also contends that the claimed trade dress cannot be portrayed accurately simply with the written description, but must include a visual image (*see id*.). According to defendant, "it is obvious from just a glance at the respective images that [its] Trade Dress is distinctive and [is] not" merely a copy of plaintiff's design (*see id*.). Defendant also contends that plaintiff altered its previous website design (Dkt. 39, Exh. A) to be more like the website design of defendant (Dkt. 36, Exh. A), and thereby created the allegedly infringing product (Dkt. 36, Exh. B).

Granting all inferences in favor of the nonmoving party, and having reviewed the written descriptions as well as the images supplied, the Court concludes that it is not obvious that defendant's website design clearly was copied from plaintiff's earlier website design.

Therefore, for all of the reasons stated above, the Court declines to dismiss defendant's trade dress claim on the basis of inadequate pleadings. *See id.* at *7-*8.

**2. Count II – Federal Unfair Competition pursuant to 15 U.S.C. § 1125(a)**

Plaintiff contends that defendant's "second count alleging violation of the Federal Unfair Competition is based exclusively on its Federal Trade Dress Claim; thus for the same reasons discussed *supra*, [*see supra*, section 1], [defendant's] second count should be dismissed" (Dkt. 39, p. 6). However, for the reasons discussed above, *see supra*, section 1, the Court has concluded that defendant's Federal Trade Dress Claim should not be dismissed. Therefore, plaintiff has offered no persuasive argument to dismiss Count II.

**3. Count III – Washington Unfair Trade Practices Act**

Similarly, plaintiff contends that defendant "cannot maintain an action for Unfair Trade Practices when it lacks a basis for its underlying Trade Dress Claim" (Dkt. 39, p. 7). However, as the Court is not granting the motion to dismiss the Trade Dress Claim, this argument does not have merit.

Plaintiff also contends that defendant's claim for unfair trade practices is preempted by patent law (Dkt. 39, p. 7). However, in the amended counterclaim, defendant has not alleged patent infringement, nor has it suggested that the elements comprising its Trade Dress could be patentable with a design patent.

Plaintiff admits that it "perhaps inartfully couched its Lanham Act Preemption argument in terms of patent protection" (Dkt. 42, p. 8). The Court notes that the case extensively quoted in plaintiff's reply brief, (Dkt. 42, p. 8 (*quoting Carson, supra*, 11 F. Supp. 3d at 328)), indicates that even if a design is patentable, for the period of time

before the patent issues, the plaintiff would have "a potential cause of action based on unfair commercial practices . . . ." *Carson, supra*, 11 F. Supp. 3d at 332. The *Carson* court did not allow the unfair commercial practices claim to go forward, in part, because the "plaintiffs do not allege any period of time that [defendant] misappropriated plaintiffs' [] products before they were patented." *Id. (quoting Hall v. Bed, Bath, & Beyond, Inc.*, 705 F.3d 1357, 1371-72 (Fed. Cir. 2013) ("all state regulation of potentially patentable but unpatented subject matter is not *ipso facto* pre-empted by the federal patent laws in the complex balance between the policy of unencumbered movement of unpatented ideas, and principles of morality and fairness that are within state authority")). In contrast, in the matter herein, even if the alleged Trade Dress could be granted a design patent, for all periods of time relevant for this matter, such would be, at most, "potentially patentable but unpatented subject matter [that] is not *ipso facto* pre-empted by the federal patent laws . . . ." *Hall, supra*, 705 F.3d at 1371-72. Plaintiff's argument regarding preemption is unpersuasive.

Although plaintiff additionally argues that defendant has offered "mere labels and conclusions" regarding this claim, this argument is not persuasive, as Count III incorporates the facts discussed above, with respect to the actions of plaintiff at the AO meeting (*see supra*, section 1 (*citing* Dkt. 36, ¶¶ 22-25, 38); *see also* Dkt. 36, ¶ 58). The motion to dismiss Count III is denied.

//

//

### 4. Count IV Common Law Unfair Competition and Count V Common Law Misappropriation

Plaintiff makes the same preemption argument regarding Counts IV and V as it does for Count III, discussed above, *see supra*, section 3. As discussed above, this argument is unpersuasive. Similarly, plaintiff makes the same arguement that defendant has offered "mere labels and conclusions" regarding Counts IV and V, as was put forth for Count III, discussed above, *see supra*, section 3. However, as discussed above with respect to Count III, for the same reasoning, this argument is unpersuasive regarding Counts IV and V as well.

### CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that plaintiff's Motion to Dismiss is denied.

Dated this 10th day of February, 2016.

J. Richard Creatura
United States Magistrate Judge